FILED

2013 Mar-28  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff / Counter Defendant, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:11-cv-1183-AKK** |
| | ) | |
| **GUSTER LAW FIRM, LLC, et al.,** | ) | |
| | ) | |
| Defendants / Counter Claimants | ) | |

## MEMORANDUM OPINION AND ORDER

A fire destroyed commercial property insured by Nationwide Mutual Fire Insurance Company.  Nationwide's investigation of the ensuing claim revealed discrepancies in the details outlined in the insurance applications, including, among other things, the age of the property, the identity of the true owner, and its occupancy and habitability status.  Nationwide subsequently filed this action against its insured, Guster Law Firm, LLC, alleging that Guster Law had no insurable interest in the property and that its applications contained material misrepresentations or were fraudulent.  Nationwide seeks a declaratory judgment as to the rights and liabilities of the parties under both the commercial property

and general liability policies.[1]  Doc. 1.  Guster Law and Guster Properties, LLC,

the true owner of the insured property, filed a counterclaim alleging breach of

contract, bad faith refusal to pay the insurance claims, and reformation of the

named insured in the insurance policies due to mutual mistake.  Doc. 15.

Nationwide moved for summary judgment contending that it is not liable for

the loss, doc. 34, and Guster Law subsequently filed a cross motion for summary

judgment, doc. 37.  Both motions and the related motions to strike are fully

briefed.  Docs.  40, 42-44, 46, 48.  For the reasons stated below, the court

**GRANTS** Nationwide's motion for summary judgment based on Guster Law's

lack of an insurable interest in the property.

## I. <u>MOTIONS TO STRIKE</u>

Nationwide moves to strike Guster Law's brief opposing Nationwide's

motion for summary judgment, doc. 40, and Guster Law's reply brief to its motion

for summary judgment, doc. 46, for exceeding the court's page limitations, and, on

hearsay and authentication grounds, several exhibits Guster Law submitted.  Docs.

43 and 48.  The court **GRANTS** Guster Law's motions for leave to exceed the

---

[1]The court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332, based upon the parties' diversity of citizenship and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.  Docs. 1, 15. The parties do not contest personal jurisdiction or venue, *see id.*, and the court finds adequate grounds alleged to support both personal jurisdiction and venue.

page limits which it filed concurrently with the challenged briefs, docs. 39 and 45, and **DENIES** Nationwide's motions to strike the briefs as **MOOT**.

Regarding the exhibits, Nationwide moves to strike as unauthenticated hearsay, Exhibits A (Loan Applications - docs. 40-1), B (Recorded Interview of Syndey Brooks - doc. 40-2), C (Appraisal Report of Joseph & Company - doc. 40-3), F (Affidavit of Eric Guster - doc. 40-6), G (Document from Nationwide's Website - doc. 40-7), J (Birmingham Fire & Rescue Run Report - doc. 40-10), and A from docs. 46-1 to 46-11 ("A2" - Loan Application documents). *See* docs. 43 and 48. Except for Mr. Guster's affidavit and the appraisal, the challenged exhibits are documents Guster Law can authenticate and introduce at trial by calling the individuals who prepared the documents or through Mr. Guster's testimony. *See* FED. R. EVID. 901. Therefore, the court may consider these documents at the summary judgment stage. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) ("a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'") (citations omitted). Accordingly, the court **DENIES** the motion to strike Exhibits A, A2, B, G, and J.

Likewise, the court **DENIES** the motion to strike the rest of the documents since these documents aided the court in evaluating Guster Law's contentions

regarding the insurable interest and reformation contentions.  Docs. 43 and 48.

## II.  <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Id*.  However, "mere conclusions and unsupported factual

allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## III.  FACTUAL BACKGROUND

On June 16, 2010, Guster Law, through its principal and sole member, Eric Guster, an attorney and a licensed real estate agent, applied for commercial liability and property insurance policies with the Sydney Brooks Insurance Agency.  Docs. 35-3 and 35-4.  Mr. Guster called Sydney Brooks, the principal of the Sydney Brooks Agency, and relayed that Guster Law needed an insurance policy to close on a loan for renovation of a commercial property.[2]  Docs. 35-2 at 16; 34 at 5; 37 at 2; 42 at 4.  Based on the information Mr. Guster provided, Brooks entered background information on the applications and faxed the applications to Mr. Guster for completion.  Doc. 35-1 at 22-24.  Mr. Guster allegedly called Brooks sometime thereafter to relay that "everything looked good" on the applications.  *Id*. at 22.

The parties disagree on the source of the information on the applications. Nationwide contends that Mr. Guster provided the information, filled in personally

---

[2]Nationwide contends that Mr. Guster only told Brooks that he was closing on a loan for a commercial property and did not mention renovations.  Docs. 44 at 3 ¶ 3; 35-1 at 16.

the sections marked by handwritten X's which Brooks had purportedly left blank, and that Mr. Guster faxed the completed applications back to Brooks.  *Id*. at 24; doc. 34 at 5 ¶ 2.  Brooks testified that he and Mr. Guster did not have any conversations about the substantive questions on the applications, and that Mr. Guster completed those portions of the applications.  Doc. 35-1 at 25.  Allegedly, Mr. Guster subsequently delivered the originals to Brooks.  *Id*. at 22-24.

Mr. Guster disagrees and asserts that he met Brooks at his office, that Brooks filled out the applications, and that, although he is a skilled legal practitioner, he signed without reading or verifying their accuracy.  Doc. 35-2 at 18.  Mr. Guster contends further that Brooks lost the original, partially handwritten applications and instead submitted typewritten applications to Nationwide's underwriting department.  Doc. 46 at 3 ¶ 3 (citing doc. 40-2 at 4).  Presumably, Mr. Guster is maintaining that the documents he signed are different from the documents Nationwide produced in this case.  However, allegedly, Mr. Guster's contention is a quintessential red herring because he purportedly testified that, except for his missing signature, his personal copies of the "missing" original applications match the copies Nationwide submitted into evidence.  Docs. 35-2 at 17-18; 44 at 2.  Thus, Nationwide asserts that even if Brooks misplaced the original applications, the applications it submitted as evidence are identical to the

originals.  Doc. 35-2 at 19.

In any event, as part of the application process, Brooks apparently visited the insured premises to verify that the property actually existed and to determine square footage.  Doc. 35-1 at 7-9.  The parties agree that Brooks never entered the building.  *Id*.  Nonetheless, Guster Law contends the inspection of the outside placed Nationwide on notice of the conditions and details of the property, including the inside conditions that Nationwide claims Guster Law never disclosed.  Doc. 46 at 3-4 ¶ 5.

## A.   The application details

Nationwide contends that Guster Law provided fraudulent or material misrepresentations in its applications.  *See* doc. 34.  Although Mr. Guster acknowledges that many of the answers are incorrect, he denies that he provided the disputed information and maintains that he never personally filled in anything on the applications.  Doc. 35-2 at 18-19.  The incorrect information Mr. Guster denies providing includes representations: (1) that Guster Law had a 10 year business history instead of eight, docs. 35-1 at 25; 35-3 at 3; 35-4 at 3; 35-2 at 18; (2) that Guster Law had "gross annual receipts [of] $125,000," instead of actual

receipts of at least $300,000,[3] docs. 35-1 at 26; 35-3 at 3; 35-4 at 3; (3) that Guster

Law has never "been involved in any lawsuits" or "ha[s] any judgments or liens...

rendered against [it]," docs. 35-3 at 3; 35-4 at 3; 35-2 at 18; and (4) that "the roof,

wiring, heating, and/or plumbing systems [have] been updated" and that the

property had battery operated smoke detectors and fire extinguishers, when in fact

there were none, doc. 35-3 at 4-5.

Mr. Guster testified that he "told [Brooks] [he] did some work on [the

building] but the years [related to the improvements], [Mr. Guster] didn't know

where [Brooks] got that," but that Mr. Guster did "not necessarily" disagree with

the information "because work had been done on the building before. And [Mr.

Guster] was continuing doing work." Doc. 35-1 at 19. Mr. Guster also admitted

that he intentionally listed "Guster Law Firm LLC DBA: Guster Law Firm LLC"

as the named insured, even though Guster Properties, a separate entity in which

Mr. Guster was also the principal, owned the building. Docs. 35-2 at 20-21; 35-4

at 3; 35-3 at 3; *see also* 35-1 at 26. However, Mr. Guster neither admits nor denies

the accuracy of the following information: (1) Guster Law had not had any losses

within the past five years, doc. 35-3 at 3; (2) the building was originally

---

[3]Mr. Guster explained this discrepancy by stating that he thought Brooks asked him about net income. Doc. 35-2 at 18.

constructed in 1974 (though records later revealed the early 1900's), and was

utilized as a law office, *id*. at 4; doc. 35-5 at 4; (3) that he lived on site, doc. 35-3

at 5; and (4) that no crimes had occurred on the property within the past three

years (though there were issues with vagrants removing boarded up doors and

trespassing on the property six to seven months before the applications), docs. 35-

4 at 4; 35-5 at 4.  Mr. Guster acknowledges that the applications he signed contain

language that "[t]he applicant has read, understands and agrees to abide by the

terms and conditions outlined in this application," that a "reasonable inquiry has

been made to obtain the answers to questions on this application," and that

"[h]e/she certifies that the answers are true, correct and complete to the best of

his/her knowledge."  Docs. 35-3 at 2; 35-4 at 2.

## B.      The general liability and commercial property insurance policies

Based on the representations Guster Law made, Nationwide issued two

policies to Guster Law for General Liability and Commercial Property.  Docs. 1-3

and 1-4.  Relevant to this lawsuit, the commercial policy contains language stating

that "[t]his Coverage Part is void in any case of fraud by you as it relates to this

Coverage Part at any time. It is also void if you, or any other insured, at any time,

intentionally conceal or misrepresent a material fact concerning . . . 2. The

Covered Property; [or] 3. Your interest in the Covered Property; . . ."  Doc. 1-3 at

26.   Likewise, the general liability policy contains language stating that "[b]y accepting this policy, you agree: a. The statements in the Declarations are accurate and complete; b. Those statements are based upon representations you made to us; and c. We have issued this policy in reliance upon your representations."  Doc. 1-4 at 20.

## C.   The fire damage and the resulting investigation

On July 26, 2010, about a month after Nationwide issued the policies, a fire destroyed the insured property.  Doc. 35-5 at 2-3.  Thereafter, Guster Law submitted a claim for $446,835, plus $30,000 for demolition.  Doc. 35-16.  During the investigation, Nationwide found several discrepancies between the representations in the applications and the state of the insured building, including that Guster Properties actually owned the building and that the insured property had no walls or flooring, no fire load, incomplete electrical and plumbing systems, no HVAC system, and only had electrical service in a single outlet.  Doc. 35-5 at 2-6; *see also, supra,* Section A.  Nationwide learned also that the property had been vacant for several years, was dilapidated, and that Mr. Guster had retained a contractor to perform various repairs, including reinforcing the foundation, at an estimated cost of $250,000.   Doc. 35-5 at 2-6.  In all, the renovations needed to complete the property included: reinforcing the structure, replacing damaged

wood, hanging and finishing sheet rock, installing and finishing five bathrooms and two kitchens, installing three HVAC units, restoring exterior molding, installing vinyl siding, and painting. *Id*. Nationwide contends that it would not have issued the policies if Mr. Guster had disclosed this information. Docs. 35-17 at 3; 35-18 at 13, 25, 45.

Nationwide retained Cause and Origin Investigator Cliff Carlisle to assist in determining the cause of the fire. Doc. 35-6 at 2-4. Ultimately, Carlisle determined that the fire had an incendiary origin based on burn patterns indicating localized burning, the three areas of origin, and the presence of an ignitable liquid. *Id*. Lt. Michael Pate, Fire Investigator with the Birmingham Fire & Rescue Service, also opined that the fire had an incendiary origin. Doc. 35-5 at 3. As a result of its investigation, Nationwide denied Guster Law's claim. Doc. 35-16.

## IV. <u>ANALYSIS</u>

In a nutshell, Nationwide asserts that Guster Law made misrepresentations, omissions, incorrect statements, or concealed facts in its applications that were either fraudulent, material to Nationwide's acceptance of the risk or hazard assumed, or such that Nationwide would not have agreed to provide the same coverage for the premium it quoted, or would have rejected Guster Law's application. Doc. 34 at 14-16, 18 (citing Ala. Code §§ 27-14-7 and 6-5-101, 102

(1975)).  Alternatively, Nationwide asserts that Guster Law has no insurable

interest and that the polices are void *ab initio*.  *Id*. at 21.  To no surprise, Guster

Law disagrees and asserts that (1) the misrepresentations, if any, were innocent,

and that the policies prohibit Nationwide from relying on the statements to rescind

the policies, (2) Nationwide cannot show that the alleged misrepresentations were

material or that Nationwide would not have issued the policies if the correct

information was known, and (3) that Guster Law has an insurable interest, or,

alternatively, that the court should reform the insurance contracts to substitute

Guster Properties, the true owner of the subject property, for Guster Law based on

a mutual mistake.  Docs. 15, 37.  The court addresses each of these contentions in

turn.

## A.   Nationwide is not entitled to void the policies based on misrepresentations or fraud

Again, Nationwide contends that the policies are void because Guster Law

made misrepresentations, omissions, incorrect statements, or concealed facts that

were either fraudulent or material to its decision to issue the policies.  Nationwide

is correct that under Alabama law, material misrepresentations or suppressions in

insurance applications <u>may</u> constitute fraud that is sufficient to void the resulting

policy.  Ala. Code §§ 6-5-100 to 102; 12-14-7(a)(1).[4]  Indeed, Guster Law's

---

[4]Ala. Code § 27-14-7 (1975). "Application for policy – Representations and misrepresentations, etc." states:

(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7.  Alabama outlines claims for legal fraud as follows:

§ 6–5–100 Fraud—right of action generally.
Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.

§ 6–5–101 Same—misrepresentation of material facts.
Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

§ 6–5–102 Suppression of material facts.
Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Ala. Code §§ 6–5–100-102.

applications included language indicating that knowingly and intentionally providing materially false information or concealing material information in the application process constituted actionable insurance fraud.  Doc. 1-3 at 11. Additionally, Guster Law's commercial property policy stated that any such fraud automatically voids the policy.  *Id.* at 26.  Nonetheless, as outlined below, factual issues remain that preclude this court from finding that Nationwide is entitled to void the policies.

### 1.    *Fraud based on material misrepresentation*

To prove fraud based on misrepresentation, Nationwide must show a misrepresentation of a material fact, reliance, and that it sustained damages as a proximate result of the misrepresentation.  *Sherrin v. Nw. Nat. Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (citing *Earnest v. Pritchett–Moore,* 401 So. 2d 752, 754 (Ala. 1981)); *AmerUs Life Ins. Co. v. Smith,* 5 So. 3d 1200, 1207 (Ala. 2008).  A "material fact" is "a fact of such a nature as to induce action on the part of the complaining party." *Graham v. First Union Nat. Bank of Georgia*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (citing *Bank of Red Bay v. King,* 482 So. 2d 274 (Ala. 1985).  "Further, the misrepresentation need not be the sole inducement.  It is sufficient if it materially contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the

falsity of the statement." *Id.* (citation omitted).  Critically, "fraud under Alabama

law need not include an intent to deceive or defraud." *Eley v. Travelers Ins. Co.,*

*Inc.*, No. 2:09-cv-958-MEF, 2011 WL 671681 at *28 (M.D. Ala. Feb. 18, 2011).

Here, Nationwide contends (1) that Guster Law misrepresented that the

building was constructed in 1974, that it occupied and owned the building, and

that the building had undergone no structural repairs, s*ee* docs. 35-3 and 35-4; (2)

that these misrepresentations were material because Nationwide would not have

issued the policies if it had known of these facts, *see* docs. 34 at 23; 35-17; 35-18

at 45; (3) that it clearly relied on the information in determining whether to issue

the policies; and (4) that it sustained damages as a result of issuing the policies.

Although the applications clearly contain misrepresentations,[5] the court agrees

with Guster Law that issues of fact preclude this court from finding as a matter of

law that the misrepresentations were necessarily "material."  Alabama courts have

held consistently that an insurance company's reliance on its own underwriters as

evidence that it would not have issued a policy based on the material

─────────────────

[5]Guster Law's contention that the misrepresentations were innocent and that it lacked an
intent to defraud, doc. 40 at 16, misses the mark because Alabama law does not require
fraudulent intent to establish a claim for fraud based upon misrepresentation of a material
existing fact: "Misrepresentations of material fact made willfully to deceive, or recklessly
without knowledge, and acted on by the opposite party, *or if made by mistake and innocently* and
acted on by the opposite party, constitute legal fraud." *See* Ala. Code § 6–5–101.  Thus, even if
Guster Law innocently misrepresented material facts, it can still be liable for fraud if Nationwide
relied on those facts. *See id.*

misrepresentations is not necessarily dispositive.[6]  Moreover, the materiality of a

misrepresentation is generally a jury question.  *Nationwide Mut. Fire Ins. Co. v.

Pabon*, 903 So. 2d 759, 766 (Ala. 2004) (citations omitted).  Consequently, as it

relates to the alleged fraudulent misrepresentations of material facts, Nationwide

failed to carry its burden.

### 2.    *Fraud based on suppression of material facts*

Nationwide claims also that Guster Law fraudulently suppressed material

facts.  To state a claim for fraud based on the suppression of material facts,

Nationwide must prove: (1) a duty on the part of Guster Law to disclose facts; (2)

concealment or non-disclosure of material facts; (3) Guster Law's knowledge of

the facts and their materiality; (4) reliance; and (5) resulting damages.  *Sherrin*, 2

F.3d at 378 (citing *Wolff v. Allstate Life Ins. Co.,* 985 F.2d 1524 (11th Cir. 1993)

and *Hardy v. Blue Cross and Blue Shield of Ala.,* 585 So. 2d 29, 32 (Ala. 1991)).

---

[6]As discussed *infra*, the Eleventh Circuit found that, "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive." *Bennett v. Mutual of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992) (citing *State Farm Fire and Cas. Co. v. Oliver*, 658 F. Supp. 1546, 1553 (N.D. Ala. 1987) ("[T]he insurance company cannot be allowed automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact.  If this were the law, insurance companies would be sorely tempted to defend, as State Farm has done here, almost every claim of loss."), *aff'd*, 854 F.2d 416 (11th Cir. 1988); *see also Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York*, 600 F. Supp. 2d 1228, 1242 (S.D. Ala. 2009) ("[T]he mere fact that [the insurer] has offered affidavits from its underwriting personnel...stating [his] belief that the omission of this information does not conclusively make it so.").

"[W]hether a duty to disclose arises in the particular circumstances of a case depends on the relationship of the parties, the value of a particular fact, the relative knowledge of the parties and other circumstances." *Graham*, 18 F. Supp. 2d at 1319 (citing *Hines v. Riverside Chevrolet–Olds, Inc.,* 655 So. 2d 909, 918 (Ala. 1994)).  For the same reasons stated in Subsection 1, *supra*, a factual question remains as to whether the information Guster Law suppressed in the applications was material and whether Guster Law knew of its materiality.  Consequently, as it relates to the purported suppression of material facts, Nationwide also failed to carry its burden.

**B.**   **Nationwide is not entitled to rescind the policies pursuant to Ala. Code §§ 27-14-7(a)(2) or (3)**

Nationwide contends alternatively that it is entitled to rescind the policies under Alabama statutes §§ 27-14-7(a)(2) and (3),[7] which allow rescission for even innocent material misrepresentations.  Guster Law counters that the policy language requires *intentional* misrepresentations and argues that Nationwide's own language waives the statutory language of § 27-14-7(a) by excusing innocent misrepresentations.  Doc. 37 at 7.  To no surprise, Nationwide disagrees and counters that § 27-14-7 is read into all insurance contracts and that the law is clear

---

[7]*See* footnote 4 for the full text of Ala. Code § 27-14-7.

"that an insured who misrepresents a material fact on their application for insurance coverage should not receive the benefits under the policy, under any circumstance."  Doc. 34 at 19. (citing *Ex parte Quality Ins. Co. v. Ruben, et al.*, 962 So. 2d 242, 247 (Ala. 2006)).  Indeed, courts generally read § 27-14-7 into all insurance contracts.  *See, e.g.*, *Thomas v. Liberty Nat. Life Ins. Co.*, 368 So. 2d 254, 258 (Ala. 1979) ("This Court has a long history of cases holding that, where a statute governs the rights, obligations, and duties of an insurer or insured, that statute is read into and becomes a part of the insurance contract.") (citation omitted); *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543-44 (11th Cir. 1994) (finding that § 27-14-7 provided three separate grounds for the rescission of a policy based on misrepresentations in the application).  However, Nationwide's reliance on this generalized principle ignores that the Eleventh Circuit has held that Alabama courts apply this principle only in situations where the insurance policy uses stricter language than the statute.  *See State Farm Fire and Cas. Co. v. Oliver*, 658 F. Supp. 1546 (N.D. Ala. 1987), *aff'd*, 854 F.2d 416 (11th Cir. 1988).

In *Oliver*, State Farm issued a policy which contained the following key paragraph: "If you or any other insured under this policy has *intentionally* concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss, this policy is void as to you and any other

insured." *Oliver*, 658 F. Supp. at 1550 (emphasis added).  Instead of invoking the contractual language, State Farm relied on § 27-14-7(a)(3) to rescind the policy. *Id*.  The Olivers countered that a threshold issue existed regarding whether State Farm waived its remaining defenses under sections 27-14-7(a)(2) and (3) because the insurance contract referred only to *intentional* misrepresentations or concealments.  *Oliver*, 854 F.2d at 419.  State Farm argued that the parties could not override § 27-14-7(a) contractually.  *Id*.  The district court disagreed and held that State Farm contractually waived its statutory defenses under § 27-14-7(a). *Oliver*, 658 F. Supp. at 1550.  The Eleventh Circuit affirmed and found that Alabama courts have read § 27-14-7 into the policy "when the contract attempted to impose more stringent conditions on the insured than in the statute, but have refused to read the statute into the contract when the contract sets less stringent standards on the insured."  854 F.2d at 420.  In short, because State Farm's policy stated that the Olivers had to "intentionally" conceal or misrepresent facts, the court found that State Farm could not rely on the lower standard of "innocent" misrepresentations outlined in § 27-14-7 to rescind the policy.  *See id.*

Similar to *Oliver*, the Commercial Property policy Nationwide issued contains the following language: "This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you, or any

other insured, at any time, *intentionally* conceal or misrepresent a material fact

concerning [the coverage]." Doc. 1-3 at 26 (emphasis added).  In light of this

language, Nationwide contracted with Guster Law for a "less stringent standard"

than in § 27-14-7(a), and, as such, the court cannot read § 27-14-7(a) into the

Commercial Property policy.  Therefore, Nationwide's motion premised on this

basis fails.

However, because the General Liability policy contains no such language,

*see* doc. 1-4, § 27-14-7(a) applies to that policy.  *See e.g., Pabon*, 903 So. 2d at

766.  Consequently, the court must address whether §§ 27-14-7(a)(2) and (3) bar

Guster Law's claim under the General Liability policy.

### 1.   *The General Liability Policy*

To trigger § 27-14-7(a), the insurer must show that the applicant made a

misrepresentation in the application, and that this misrepresentation was a material

contributing influence that induced the insurer to issue the policy.  *See Caribbean*

*I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York*, 600 F. Supp. 2d 1228,

1240 (S.D. Ala. 2009) (citing *Alfa Life Ins. Corp. v. Lewis,* 910 So. 2d 757, 762

(Ala. 2005).  The insurer does not have to show that the insured had an intent to

deceive.  Rather, "even if innocently made, an incorrect statement that is material

to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Alfa Life Ins. Corp.*, 910 So. 2d at 762.

### a.  § 27-14-7(a)(2) - Misrepresentation material to the risk of loss

Again, generally, the materiality of a misrepresentation on an insurance application is a jury question. *Pabon*, 903 So. 2d at 766 (citations omitted). Although courts rarely find that a misrepresentation is material as a matter of law, *see, e.g., Bennett v. Mutual of Omaha Ins. Co.,* 976 F.2d 659, 661 (11th Cir. 1992), some misrepresentations, whether made intentionally or innocently, increase the risk of loss as a matter of law and are therefore material to the issuance of the policy. *See, e.g.*, *Lewis,* 910 So. 2d at 762;[8] *Clark v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 465 So. 2d 1135, 1140 (Ala. Civ. App. 1984). Unfortunately for Nationwide, the limited cases that have found materiality as a matter of law are distinguishable from this case.  In fact, Nationwide does not

---

[8]In *Lewis*, the life insurance application at issue stated "IF ANY ANSWER TO THE FOLLOWING QUESTIONS IS 'YES,' THE PROPOSED INSURED IS NOT ELIGIBLE FOR COVERAGE," and the insured incorrectly answered "no" to a question concerning whether she was ever diagnosed with congestive heart failure. *Lewis,* 910 So. 2d at 762.  The court held that regardless of the fact that the insured innocently wrote the incorrect answer, the answer was obviously material to the insurer's risk of loss since the insurer made clear that this issue was dispositive on the issuance of coverage. *Id*.  Therefore, the court found that the insurer was entitled to rescind the policy pursuant to section 27-14-7(a)(2).  *Id*. at 763.

point to any case that granted summary judgment based on misrepresentations that are similar to those here. *See* docs. 34, 42, 44. Instead, Nationwide relies solely on the testimony of its underwriter Kristen Cheatwood to establish materiality. *See* docs. 35-17 at 3; 35-18 at 13, 25, 45. However, as Guster Law correctly points out, courts are reluctant to accept a "self-serving evaluation" by an insurer's employee. *See* doc. 37 at 12 (citing *Oliver*, 658 F. Supp. at 1553) ("[T]he insurance company cannot be allowed automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact. If this were the law, insurance companies would be sorely tempted to defend, as State Farm has done here, almost every claim of loss."); *see also Bennett v. Mutual of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992) ("[U]nder Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive.") (citation omitted). Based on the case law and the record before this court, this court cannot conclude as a matter of law that Guster Law made material misrepresentations in its application, nor can it agree with Guster Law either, *see* doc. 37 at 5-11, that it is due summary judgment under section 24-14-7.

### b.   § 27-14-7(a)(3) - Insurer would not have issued policy at all or at same terms

Nationwide relies next on § 27-14-7(a)(3) for its contention that the misrepresentations factored into its decision to issue the policy.  To establish a defense under § 27-14-7(a)(3), an insurer "need only have presented evidence that the [applicant] made the misrepresentation and that [the insurer] would not have issued the ... policy had it known the actual facts."  *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1543 (11th Cir. 1994); *see also First Fin. Ins. Co. v. Tillery,* 626 So. 2d 1252, 1256 (Ala. 1993) (stating that an insurer has the right to expect applicants for policies to tell the truth and finding that Alabama has written this public policy into law in Section 27–14–7).  The insurer does not have to show an intent to deceive; rather, it can raise the defense even if the misrepresentation was unintentional and innocently made.  *Pabon*, 903 So. 2d at 766 (citation omitted).  Also, reliance on Section 27-14-7(a)(3) does not hinge on the adequacy or existence of the insurer's own investigation.  To the contrary, that "the insurer could make its own investigation also does not lessen its right to rely on the representations in the application."  *Id.* at 767 (citation omitted); *Caribbean I Owners' Ass'n, Inc.*, 600 F. Supp. 2d at 1240.

The key question with regard to the availability of Section 27-14-7(a)(3) as

a defense is the good faith of the insurer in refusing to issue the policy. *Henson v. Celtic Life Ins. Co.,* 621 So. 2d 1268, 1275 (Ala. 1993). Moreover, an insurer relying on § 27-14-7(a)(3) has the burden of demonstrating that its underwriting guidelines in dealing with similar misrepresentations are universally applied. *Sharp Realty & Mgmt., LLC v. Capitol Specialty Ins. Corp.*, CV-10-AR-3180-S, 2012 WL 2049817 (N.D. Ala. May 31, 2012) (citing *Mega Life and Health Ins. Co. v. Pienozek,* 516 F.3d 985, 989 (11th Cir. 2008)). In that regard, Nationwide offers the affidavit and deposition of Kristen Cheatwood, who testified that had Guster Law properly disclosed the characteristics of the property, particularly that it was vacant and that Guster Law was not the true owner, Nationwide would not have issued the policies based on Nationwide's underwriting policies. Docs. 35-17; 35-18 at 45. Unfortunately, Nationwide failed to provide evidence of universal application of its underwriting policy or similar situations in which it denied coverage. Therefore, similar to the materiality issue, the court cannot conclude as a matter of law that Nationwide in good faith would not have issued the policies. As the Eleventh Circuit found in a case interpreting § 27-14-7(a)(3), "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive."

*Bennett*, 976 F.2d at 661.  In light of the disputed issues regarding the universal

application of Nationwide's underwriting policies, the court cannot conclude as a

matter of law that either Guster Law or Nationwide is due to prevail on the general

liability policy based on § 27-14-(a)(3).  Accordingly, both parties' motions on

this basis fail.

## C.    Insurable interest and reformation of contract

As stated previously, although Guster Properties actually owned the insured

property, Guster Law applied for the policies and represented in the applications

that it owned the property.  Consequently, citing Alabama Code § 27-14-4,[9]

Nationwide asserts that it is due summary judgment because  Guster Law had no

_____

[9]Ala. Code § 27-14-4 states:

> (a) No contract of insurance of property or of any
> interest in property, or arising from property, shall
> be enforceable as to the insurance except for the
> benefit of persons having an insurable interest in the
> things insured as at the time of the loss.

> (b) "Insurable interest," as used in this section,
> means any actual, lawful and substantial economic
> interest in the safety or preservation of the subject
> of the insurance free from loss, destruction or
> pecuniary damage or impairment.
> (c) The measure of an insurable interest in property
> is the extent to which the insured might be
> damnified by loss, injury, or impairment thereof.

insurable interest in the subject property at the time of the loss and that the insurance policies are void *ab initio* "because Guster Law did not maintain any personal property on the premises, it is not on the loan and was not paying rent to Guster Properties at the time of the loss."  Doc. 34 at 23.  Guster Law counters that it has an insurable interest, or, alternatively, that the court should reform the insurance contracts to substitute Guster Law for Guster Properties.

### 1.    *Contract reformation*

Guster Law asks the court to reform the policies to replace Guster Properties as the insured because the parties allegedly made a "mutual mistake." Doc. 40 at 23-28.  When a written contract purportedly does not express the parties' intentions, Alabama law allows reformation in situations including fraud, mutual mistake, or unilateral mistake which the other party knew or suspected at the time, "so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value."  Ala. Code § 8-1-2.  However, the party seeking reformation must show a "mutual misunderstanding concerning a basic assumption on which the contract was made."  *Finley v. Liberty Mut. Ins. Co.*, 456 So. 2d 1065, 1067 (Ala. 1984) (citation omitted).

To support its contention of a mutual mistake, Guster Law claims that it

provided Brooks an appraisal identifying Guster Properties as the owner.[10] *See*

doc. 40 at 26.  Unfortunately for Guster Law, an appraisal obtained in November

2009 does not establish ownership rights in June 2010.  *See* docs. 40-3, 35-3, 35-4.

After all, Guster Properties may have obtained the appraisal in anticipation of a

potential sale of the property to Guster Law.  Moreover, since Guster Law admits

that it informed Brooks that it needed the insurance policies to close on a

commercial loan for renovation of a building, *see* doc. 40-6 at 3, a seven month

old appraisal identifying Guster Properties as the owner does not eliminate the

possibility that Guster Law may have subsequently obtained the property in

conjunction with the loan application that triggered the need for the insurance

policy.  Put differently, even if the court overlooks Nationwide's evidentiary

objections and finds that Guster Law provided an appraisal to Brooks, that fact is

not dispositive evidence of a mutual mistake justifying reformation.

Reformation is inappropriate here given that Mr. Guster  testified that he

applied for the policies on behalf of "Guster Law Firm, LLC," even though Guster

Properties owned the property and is a separate legal entity from Guster Law.

Doc. 35-2 at 20-21; *see also* doc. 40 at 7.  To reform the contracts under these

---

[10]Again, Nationwide challenges this testimony and the supporting documents as hearsay.
*See* doc. 43. The court does not have to address Nationwide's contention to resolve this matter.

facts, the court would have to ignore the actual applications and evidence that Nationwide believed that Guster Law owned the property since Mr. Guster listed it as the named insured.  Docs. 34 at 24; 44 at 10.  As stated previously, Guster Law's contention that the appraisal it provided should have placed Nationwide on notice that Guster Properties owned the property is unavailing. Likewise, while Guster Law contends in its reply brief in support of its own motion for summary judgment that it also provided Nationwide the deed to the property that identified Guster Properties as the owner, doc. 46 at 15, the only evidence it provided to support this bare assertion is an alleged email dated December 2010, *i.e.*, well after the policies were issued, which states, "INVESTIGATION - CONFIRMED THAT GUSTER PROPERTIES LLC IS LISTED ON THE DEED AS THE OWNER, GUSTER LAW FIRM IS NOT LISTED[.] Guster Law Firm does not have an insurable interest in the property."  Doc. 46-16 at 2.  However, this evidence hurts Guster Law's contention because it indicates, based on the date and the language, that during the *investigation* of Guster Law's claim, Nationwide learned that Guster Law was not listed on the deed, and, therefore, determined that Guster Law did not have an insurable interest.

Finally, Guster Law also contends, without any support, that Nationwide knew the "identity of the lien holder during the application process [because

Nationwide's agent] sent confirmation of insurance coverage to Renasant Bank[.]"
*Id*. at 16 (citing doc. 40-1 "Exhibit A").  However, it is not clear from a review of
Exhibit A that Nationwide ever received any of the documents at issue.  Rather,
the first page of the document simply lists "Renasant Bank" as the holder of the
first mortgage and "Guster Law Firm, LLC" as the named insured.  Doc. 40-1 at 2.
This evidence appears to hurt, rather than support, Guster Law's contention.

In short, based on this record, the court finds that Guster Law committed a
unilateral mistake when it named Guster Law as the insured and that Guster Law
has provided no acceptable evidence that Nationwide had knowledge of this
alleged mistake.  Alabama law is clear that courts should refrain from reforming
policies because of unilateral mistakes.  *See e.g., American and Foreign Ins. Co. v.
Tee Jays Mfg. Co., Inc.*, 699 So. 2d 1226, 1227-28 (Ala. 1997); *Greil v. Tillis*, 170
Ala. 391, 394 (Ala. 1910) ("[G]enerally an unexplained signing [of a contract],
without excuse for neglecting to read, or to make inquiry, and without any fraud,
deceit, or misrepresentation being practiced on the maker or grantor *by which he
was induced to execute the paper*, is not ground for relief, or defense to an action
on this paper.") (emphasis in original).  The court finds persuasive that Mr. Guster
is an attorney and a sophisticated businessman who entered into an arms length
agreement with Nationwide for the policies on behalf of Guster Law.  Mr. Guster

cannot now claim that he intended to obtain the policies for Guster Properties and that the court should overlook his unilateral mistake and reform the contract.  The court declines to do so since the Supreme Court has held that in situations involving a sophisticated businessman, like Mr. Guster, courts must honor and enforce contracts in absence of some compelling and countervailing reason making enforcement unreasonable.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972).

### 2. *Insurable interest as a non-owner*

The court must next consider whether Guster Law has an insurable interest in the property.  In Alabama, ownership of an insurable interest is not restricted to the owner of the property.  Rather, anyone with a "substantial economic interest in the safety or preservation of the [property...] free from loss, destruction or pecuniary damage or impairment" can have an insurable interest.  Ala. Code § 27-14-4.  As a result, Alabama courts have held that any person who has a "reasonable expectation of pecuniary benefit from the continued existence of the subject of insurance [has] a valid insurable interest."  *National Sec. Fire. & Cas. Ins. Co. v. Brannon*, 47 Ala. App. 319, 323 (Ala. Ct. Civ. App. 1971); *see also Brewton v. Ala. Farm Bureau Mut. Cas. Ins. Co., Inc.*, 474 So. 2d 1120 (Ala. 1985).  As the *Brannon* court explained,

> It seems to be settled law everywhere that a policy of insurance is
> void Ab initio, unless the insured has an insurable interest in the
> property, and the reason for the rule most commonly assigned is that
> if the insured has no insurable interest in the property insured, the
> insured is wagering that a loss or damage to the property will occur
> and the insurer is wagering that it will not, thereby supplying the
> insured with an incentive to injure or destroy the insured property,
> which is against public policy.

47 Ala. App. at 324.  Courts have labeled this "the general rule of law condemning

any mere gambling element of insurance."  *Id*. at 323 (citations omitted).

Moreover, courts have found these provisions are "[m]erely declaratory of those

legal principles which have long governed the concept of insurable interest in this

State," and that the theories of waiver and estoppel are an integral part of this

concept.  *Brewton*, 474 So. 2d at 1122 (citing *National Security Fire & Casualty

Co. v. Hester,* 298 So. 2d 236, 239 (Ala. 1974)).  "[T]hese theories only require

that the insureds act in good faith and have some sort of pecuniary interest in the

insured property at the time of the loss...." *Id*. (citing *Hester*, 298 So. 2d at 244).

Since it is undisputed that Guster Law did not own the property insured, the

court must decide whether Guster Law had a "substantial economic interest in the

safety or preservation of the [property]" such that it still has an insurable interest

in the property.  *See* Ala. Code § 27-14-4.  To that end, Guster Law contends that

"Mr. Guster clearly has an interest in the preservation of the same properties in

which either the law firm or the property holding company have a respective interest.  This is more than enough to give Guster an insurable interest in the subject property."  Doc. 40 at 26.  Put differently, Guster Law maintains that it has an insurable interest because it shares the same owner as Guster Properties.  Indeed, when asked whether Guster Law had an interest in the property, Mr. Guster responded, "Yes, because I own both companies."  Doc. 35-2 at 21.  Unfortunately for Guster Law, sharing a common owner with Guster Properties does not mean that Guster Law has an insurable interest in property owned by Guster Properties.

In *Brannon*, the Court of Civil Appeals of Alabama held that an undisclosed gratuitous agent of a principal has no insurable interest in the property. 47 So. 2d at 781.  In that case, Brannon, the uncle of the actual owner of the property, applied for and received insurance coverage on the subject property in his name.  *Id*. at 777-78.  Although the owner of the property (Brannon's nephew) approved of Brannon's actions, especially since Brannon rented the property, paid the bills and taxes, handled repairs, and paid the surplus of the rent to the nephew, the court held nonetheless that Brannon had no insurable interest in the property, and that the policy was void *ab initio*.  *Id*. at 778-82.  The court reached this conclusion even though it found that Brannon had no intent to deceive the insurance company

and wanted simply to preserve the property based on his "love and affection for his nephew." *Id*. at 780-81. Instead, the court found it significant that Brannon did not disclose to the insurer the true condition of the title – *i.e.*, that he did not own the property. *Id*. at 781; compare *Brewton*, 474 So. 2d at 1123 (holding that non-owner of home to whom the owner had promised to devise the home did not have a insurable interest since she had no title, no actual or constructive possessory interest in it, and did not suffer any economic loss from its destruction); with *Hester*, 298 So. 2d at 594-600 (holding that non-owners who were in possession of property, had an option contract to purchase the property that was irrevocable for several months, partially paid the purchase price, disclosed the true ownership of the property to the insurance agent when applying for the insurance, and made substantial improvements to the insured premises had an insurable interest).

Guster Law had an even more tenuous interest in the insured property than Brannon. In addition to the failure to disclose to Nationwide that it was not the true owner, Guster Law was not occupying the insured property, had not taken a loan out related to the property, and had not invested any money in the improvements made to the property. In fact, according to Mr. Guster, Guster Law had not rented the insured space from Guster Properties and no contractual

relationship existed between the two entities. *See* doc. 35-2 at 21-22.

Notwithstanding Guster Law's plan to use the property as its law office, the fact

remains that Guster Law suffered no pecuniary loss from the fire.  In that respect,

even if the court found that Guster Law had an insurable interest, the court is at a

loss as to what Guster Law can recover since it technically did not suffer a loss.

Rather, Guster Properties, which took out a loan for $152,388.25 for the

renovations to convert the property to a law office, is the entity that suffered a

loss.  *See* doc. 40-1 at 5.  That the two entities share a common principal does not

eliminate the fact that they are two separate legal entities.  Moreover, while Mr.

Guster, doing business as Guster Law, was arguably acting as an undisclosed

gratuitous agent for Guster Properties, because Mr. Guster failed to disclose the

true ownership of the property, just like in *Brannon*, Guster Law has no insurable

interest in the property.  *See Brannon*, 47 So. 2d at 782.  Accordingly, the court

finds that Guster Law has failed to provide evidence sufficient to prove that it had

an insurable interest, and that Guster Law may not proceed with its claims against

Nationwide related to the policies.  Therefore, the court **GRANTS** Nationwide's

motion for summary judgment.

## D.    **Guster Law's Counterclaims**

In light of the court's ruling that Guster Law has no insurable interest, the

counterclaims for bad faith refusal to pay and breach of contract that Guster Law and Guster Properties raise fail. *See* doc. 15. There simply cannot be a breach of contract when the first element of such a claim is the existence of a valid contract. *See Ex parte Coleman*, 861 So. 2d 1080, 1085 (Ala. 2003); *Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So. 2d 665, 673 (Ala. 2001). Likewise, there is no bad faith refusal to pay if a valid contract does not exist. *See Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). Alternatively, the bad faith claim fails also because Nationwide had arguable reasons to deny Guster Law's claim, *i.e.*, whether Guster Law had an insurable interest and whether the misrepresentations in the applications entitled Nationwide to rescind the polices under Section 27-14-7. *See Bowen*, 417 So. 2d at 183 and *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981).

## V. <u>CONCLUSION</u>

Based on the totality of the evidence, the court **GRANTS** Nationwide's motion for summary judgment based on Guster Law's lack of an insurable interest in the insured property, doc. 34, and **DENIES** Guster Properties and Guster Law's motion for summary judgment, doc. 37. This case is **DISMISSED with prejudice**.

**DONE** the 28th day of March, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE